UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES E. WATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:05-CV-00028 RM |
| | ) |
| BARBARA KASPER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Charles Watkins submitted a complaint under 42 U.S.C. § 1983, alleging violation of his federally protected rights by Miami Correctional Facility ("MCF") officials. The court screened the complaint pursuant to 28 U.S.C. § 1915A, dismissed some claims and defendants, and allowed Mr. Watkins to proceed against Dr. Barbara Kasper, Robert Moore, Sally Stevenson, Chris Johnson, Brenda Bowman, Shannon Carter, Janet Tuley, Steve Stanton, and Superintendent John VanNatta on the retaliation claim presented in Count I of his complaint. The defendants move for summary judgment, pursuant to FED. R. CIV. P. 56; Mr. Watkins has responded. For the reasons that follow, the court grants the defendants' summary judgment motion in part and denies it in part.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is

> a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
>     . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio *Corp.*, 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

In support of their summary judgment motion, the defendants submit defendant Kasper's declaration, portions of discovery responses, a notice to library workers, Operational Procedure 00-01-102, and a conduct report and disciplinary hearing report. In response, Mr. Watkins submitted his own affidavit, several inmates' affidavits, his offender evaluation reports, defendant Moore's responses to interrogatories, documents from disciplinary proceedings against him, and other documents.

In his complaint, Mr. Watkins alleges that the defendants, particularly Dr. Kasper, retaliated against him for engaging in constitutionally protected activities, including filing a grievance, complaining about policies at the MCF, and helping other inmates to file grievances, tort claims, and complaints. He alleges that the defendants retaliated against him for exercising these First Amendment rights by removing him from his job at the law library, destroying his personal property, writing baseless conduct reports against him, and banning him from coming to the law library to work on his own cases.

To prevail on his retaliation claim, Mr. Watkins must prove that he engaged in a Constitutionally protected activity and that engaging in that activity was a substantial or motivating fact in the defendants' actions against him. Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977); Brookings v. Kolb, 990 F.2d 308, 315 (7th Cir. 1993). If the defendants prove that a legitimate reason existed for their actions and they would have taken the same actions regardless of whether the plaintiff engaged in the protected activity, then the plaintiff can prove retaliation only if he can show that the legitimate reason given for the allegedly retaliatory act is pretextual. Mt Healthy City School District v. Doyle, 429 U.S. at 575.

According to defendant Kasper's declaration, on February 11, 2004, MCF officials issued a notice to law library workers that they could no longer store personal items in the law library. Two days later, defendants Johnson and Kasper met with the law library clerks and told them that pursuant to MCF policy and procedure #00-01-102, they were no longer to provide legal assistance to other inmates except for directing them to legal research materials, providing forms, and making copies.[1] They also ordered the law clerks to remove their personal property from the law library. The next day, when cleaning the law library before an inspection by the American Correctional Association, defendant Kasper says she found that Mr. Watkins "still had a plethora of personal items stored in the law library on February 14, 2004." (Kasper affidavit ¶ 15). She states that she ordered these items to be boxed up and placed into storage.

---

[1] According to Defendant Moore's interrogatory responses, at the meeting, Mr. Johnson "took the position that clerks could guide and direct offenders to appropriate research materials, and review materials and pleadings prior to submission to the courts." (Plaintiff's exhibit E, response to Interrogatory #7).

On February 16, Dr. Kasper wrote an evaluation report suggesting that Mr. Watkins be discharged from the law library in part because he had disobeyed the orders to remove his personal property from the law library. On February 18, Mr. Watkins was removed from his position as a law library clerk. Dr. Kasper states that she wasn't aware that Mr. Watkins had filed a grievances against her until after she recommended that he be removed from the law library. Dr. Kasper doesn't address Mr. Watkins's claims that she wrote a false conduct report against him, destroyed his personal property or banned him from coming to the law library to work on his own cases.

The affidavits and other materials submitted by Mr. Watkins paint a different picture of the facts. In his affidavit, Mr. Watkins states that Dr. Kasper's predecessor gave him permission to keep personal legal research books and materials in the law library, and that he and others used them for legal research. He concedes that he received notice on February 11 that he was to remove his personal materials from the law library. But he contends that at the February 13 meeting, Mr. Johnson gave the inmates a reprieve and allowed them to store their property in the library for at least another week.

Mr. Watkins states that he after he was terminated from the law library, defendant Carter informed him that defendants Kasper and Stevenson had ordered that he couldn't come to the law library to work on his own cases. The next time he tried to use the law library, defendant Moore ejected him "because per Sally Stevenson, he was not permitted access to the law library." (Watkins affidavit ¶ 29).

The inmate affiants generally agree that Dr. Kasper stated on many occasions that she did not believe inmates should be allowed to file institutional grievances or civil complaints against the Indiana Department of Correction and its employees, that she was firmly opposed to inmates assisting one another in legal research or preparing grievances and complaints, and that "she would put a stop to the filing of lawsuits and complaints against the facility and staff." (Affidavit of Brandon Black). Many of the affiants state that Dr. Kasper took specific actions to impede their access to the courts or to peruse and copy inmates' confidential legal materials outside their presence. Some of the affiants state that after firing Mr. Watkins and other inmate law library workers, she said she had solved the problem of inmate lawsuits by removing "problem inmates" from the law library. Dr. Kasper does not deny that she made any of the statements attributed to her by these affidavits.

To prevail on his retaliation claim, Mr. Watkins must prove that he engaged in a constitutionally protected activity and that engaging in that activity was a substantial or motivating fact in the defendants' actions against him. Brookings v. Kolb, 990 F.2d 308 at 315. Mr. Watkins asserts that the defendants retaliated against him for exercising his own First Amendment right to file grievances and complain about conditions at the MCF,  and for speaking to other inmates about filing institutional grievances and complaints.

The defendants note that the constitution does not guarantee a prisoner the right to assist other inmates with legal matters. Shaw v. Murphy, 532 U.S. 223 (2001) (inmates do not have a special right under the First Amendment to provide legal assistance to other inmates). Because he has no constitutionally protected

right to assist other inmates with their legal work, Mr. Watkins states no retaliation claim for assisting other inmates.

Mr. Watkins also asserts that the defendants retaliated against him for filing his own grievances and for verbally questioning decisions made by Dr. Kaspar and other officials. The First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures as well as filing complaints in court. Retaliation for filing a grievance or orally complaining about treatment by officials strikes at the heart of an inmate's constitutional right to seek redress of grievances. Sprouse v. Babcock, 870 F.2d 450 (8th Cir. 1989); Dixon v. Brown, 38 F.2d 379 (8th Cir. 1994). "It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." Buise v. Hudkins, 584 F.2d 223, 229 (1978). The principles set forth in Buise apply to allegations that staff members retaliated against inmates for filing grievances. Burton v. Kuchel, 865 F.Supp. 456, 467 (N.D. Ill. 1994) (defendants' actions were motivated in part by "a desire for retaliation against Plaintiff for Plaintiff's filing of a grievance against Kuchel and complaining to prison officials about Kuchel's wrongful conduct."); Geder v. Godinez, 875 F.Supp. 1334, 1338 (N.D. Ill. 1995) (officer retaliated against an inmate by issuing him "a false disciplinary ticket in retaliation for the exercise of his constitutionally guaranteed right to submit written grievances about Stateville's living conditions"). In Geder, the court concluded that prisoners:

> have a protected First Amendment right to submit written and oral complaints about prison conditions, and where there is evidence of retaliation against constitutionally protected speech, the protection of prisoners' due process rights does not shield prison employees

>from a Section 1983 claim . . . To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred. In this case, Mr. Geder insists that Lt. Manning issued him a false disciplinary ticket solely because Mr. Geder filed grievances which implicated Lt. Manning's co-workers.

Geder v. Godinez, 875 F.Supp at 1338 (citations omitted).

The defendants argue that the only protected activity by Mr. Watkins that Dr. Kasper could have been retaliating against him for was a grievance he filed against her on February 17, after she had already recommended that he be discharged. But the Constitution also forbids retaliation for making oral complaints about prison conditions, and Dr. Kasper concedes in her declaration that Mr. Watkins argued with her that her actions violated inmates' First Amendment rights just before she recommended his removal from the law library. (Kasper declaration ¶ 12). Moreover, Mr. Watkins alleges that Dr. Kasper wrote a baseless conduct report against him on February 17, the same day he filed his grievance, and that she took other actions against him after he filed his grievance.

Mr. Watkins states a chronology of events from which a factfinder might infer retaliation by some defendants for engaging in protected First Amendment activities. Accordingly, the burden shifts to these defendants to establish a legitimate non-pretextual reason for their actions.

The only reason Dr. Kasper submits to the court for her actions was that she found that Mr. Watkins "still had a plethora of personal items stored in the law library on February 14, 2004."(Kasper affidavit ¶ 15). Mr. Watkins was discharged from his law library job based on Dr. Kasper's recommendation. Accordingly, the burden shifts to Mr. Watkins to show that the reason given by Dr. Kasper is pretextual.

7

Mr. Watkins submitted evidence that at the February 13 meeting, defendant Johnson, Dr. Kasper's superior, told the law library clerks that they could leave their legal materials in the law library until the following week and then it would have to be sent home. (Affidavit of Benton Jordan ¶ 18). Defendant Moore also recalls that he "heard Mr. Johnson tell the clerks this." (Plaintiff's exhibit E, response to Interrogatory #10).

Inmate Anthony Fisher states in his affidavit that Mr. Watkins wasn't present in the law library on February 14 when other inmates were packing their property to store in the law library as defendant Johnson ordered. Mr. Fisher states that he told Dr. Kasper he "thought it would be a good idea to send (Mr. Watkins) a pass so that he could move his own stuff. She replied that she would not send him a pass and that I was to move it immediately. I therefore moved his legal work to the back shelf that she indicated I was to move it to." (Fisher affidavit at p. 1). Inmate Tom Moore states in his affidavit that he "watched Kasper throw most of Watkins's material into the trash can." (Moore declaration ¶ 4).

On February 17, Mr. Watkins filed a formal grievance against Dr. Kasper. The same day, she wrote a conduct report against Mr. Watkins for having personal property in the law library. Defendant Johnson submitted a written witness statement in which he stated that the law library workers had been told they could have legal materials in the law library; defendant Moore submitted a witness statement in which he wrote that "on Feb. 13, 2004, there was a meeting with Mr. Johnson and the law clerks. The question of personal legal materials came up. Johnson indicated to them that all clerks could keep the materials 'until next week' - and at that time a decision would be made as to how much could be kept."

8

(Plaintiff's Exhibit Y). The disciplinary hearing board found Mr. Wakins not guilty because the statements from defendants Johnson and Moore established that Mr. Watkins and the other law library clerks "could leave their legal work in the law library until further notice." (Plaintiff's Exhibit Z).

Mr. Watkins went to the law library on February 26 to pick up his property. He states that he asked Dr. Kasper about his property that she had thrown in the trash. As a result of this incident, Dr. Kasper wrote a conduct report against him for "intimidation." Based on witness statements, including one from defendant Moore, the disciplinary hearing board found no intimidation had occurred and reduced the charge to being disorderly because it believed that charge "better reflects [the] actual violation based on c/r, witness, + own statements. Ofd. was loud + confrontational." (Defendants' exhibit I)

In considering whether any genuine issues of material fact exist, the court must "view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." McGinn v. Burlington Northern R.R. Co., 102 F.3d at 298. It is not in dispute that Mr. Watkins verbally opposed Dr. Kasper's plans to prohibit the law library clerks from helping other inmates and her order to remove their personal law books from the law library. According to Mr. Watkins's submissions, including statements from two of the defendants, at the February 13 meeting, Mr. Johnson told the law library workers in Dr. Kasper's presence that they could store their property in the law library until at least the following week. Nevertheless, after refusing to send him a pass to box his property, Dr. Kasper wrote a conduct report against Mr. Watkins and recommended that he be removed from the library because he still had a plethora

9

of personal items stored in the law library on February 14. The disciplinary hearing board, found Mr. Watkins not guilty based on testimony from other staff members, that Mr. Watkins had been told, in Dr. Kasper's presence, that he could store his property in the law library for at least another week. Dr. Kasper also wrote another conduct report against Mr. Watkins for intimidation, which the disciplinary hearing board reduced to disorderly conduct based on staff and inmate testimony.

Accepting Mr. Watkins's version of events as true, the court cannot say that a reasonable factfinder could not conclude that the reason Dr. Kasper gave for her actions was pretextual and that retaliation was a substantial motivating fact in her actions against him. Accordingly, Dr. Kasper is not entitled to summary judgment on the claim that she retaliated against Mr. Watkins for engaging in protected First Amendment activities.

In addition to Dr. Kasper, Mr. Watkins alleges that Robert Moore, Sally Stevenson, Chris Johnson, Brenda Bowman, Shannon Carter, Janet Tuley, and Steve Stanton retaliated against him. The plaintiff's submissions contain evidence that defendant Stevenson participated along with Dr. Kasper, in making decisions adverse to Mr. Watkins. But the evidence does not support a retaliation claim against the other defendants. Two of them, Robert Moore and Chris Johnson, actually provided statements that prevented the disciplinary hearing board from finding Mr. Watkins guilty of a conduct report written by Dr. Kasper. Some of the other defendants relayed messages to Mr. Watkins, but the evidence does not suggest that they were the actual decision makers in removing him from the law library or that they participated in other adverse actions against him.

Section 1983 creates a cause of action for damages based on personal liability. A plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains, Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. Benson v. Cady, 761 F. 2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, which allows a superior to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001); Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

The court allowed Mr. Watkins to proceed against Supt. VanNatta for injunctive relief on his request to be reinstated in the law library. But the evidence submitted by the parties establishes that in 2005, MCF officials offered to rehire Mr. Watkins as a law library clerk. In response, Mr. Watkins stated he "will work in the Phase I Library with Mr. Moore," but did not agree to work in the Phase II Library with Dr. Kasper. (Plaintiff's Exhibit GG). Accordingly, the court dismisses the claim for injunctive relief to be reinstated in law library, and will dismiss Supt. VanNatta.

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment (docket #69) in part and DENIES it in part. The court GRANTS summary judgment to defendants Robert Moore, Chris Johnson, Brenda Bowman, Shannon Carter, Janet Tuley, Steve Stanton, and John VanNatta, and DISMISSES the plaintiff's injunctive relief claims. The court DENIES summary judgment to defendants Barbara Kasper and Sally Stevenson.

11

SO ORDERED.

ENTERED: March  8 , 2007

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court